UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-22248-CV-HOEVELER

BANK OF AMERICA, N.A.,
a national banking association,

    Plaintiff,
v.

M/V MIMI III (OFFICIAL NO 996235),
her engines, hull, tackle, apparel,
equipment, etc., *in rem*; MARY & BUCK
CORP., a Texas corporation, *in personam*;
and CHARLES E. PASCHALL, JR.,
*in personam*,

    Defendants.

<u>ORDER</u>

    BEFORE the Court is Bank of America's (1) renewed motion for interlocutory sale of the vessel and (2) motion for summary judgment. The motions have been fully briefed and are ready for a decision. For the reasons that follow, the motion for interlocutory sale is GRANTED and the motion for summary judgment is GRANTED in part and DENIED in part.

<u>Background</u>

    On July 29, 2009, Bank of America filed a verified complaint to foreclose its maritime lien on the M/V Mimi III. In 2001, the defendants Mary & Buck Corporation and its owner, Charles Paschall, offered up the M/V Mimi III as collateral to secure a $735,000 loan from Bank of America (BOA). The defendants executed a $735,000 Promissory Note in favor of the bank on April 2, 2001 and, as

security, gave BOA a First Preferred Mortgage in the vessel.[1] In addition, the defendants executed a Security Agreement giving BOA a security interest in all inventory, equipment, and general intangibles of the Mary & Buck Corporation. The promissory note and security agreements were renewed in 2006. Based on the allegations in the pleadings and the undisputed affidavits submitted by BOA, the defendants breached the terms of the financial agreements by failing to make timely payments on the loan, thereby causing the outstanding principal of $454,666 (plus $19,339 interest and $3,270 in late fees, as of January 19, 2010) to become immediately due. The three-count complaint asserts claims for *in rem* foreclosure of the Preferred Ship Mortgage (Count I); foreclosure of the personal property under the Security Agreement (Count II); and for breach of the Promissory Note (Count III).

On July 30, 2009, the Court granted the plaintiff's motion for the U.S. Marshals to arrest the vessel. On the same day, the Court entered an order appointing Miami Trading Company & Brokers, Inc., as substitute custodian. On September 30, 2009, BOA moved for interlocutory sale of the vessel, with the proceeds to be deposited with the Court, in order to preserve the value of the collateral while the action was pending. The defendants objected to the sale and offered to post a bond in the amount of the value of the

---

[1] The Promissory Note and First Preferred Mortgage are Exhibits A and B to the plaintiff's complaint. The additional Security Agreement is Exhibit C.

vessel, or reach some other financial agreement with the bank, in order to avoid foreclosure. At a motion hearing on November 30, 2009, which was attended by counsel for both sides and Mr. Pacshall, the defendants agreed to post a bond with the Court in the amount of $477,000 within 30 days, at which point the bank would release the boat. The parties jointly submitted a proposed order directing the defendants to post the bond within 30 days, and further holding that the parties' dispute about the exact amount of substitute custodian fees would be addressed at a later hearing. The Court signed the order on December 7, 2009. (See December 7, 2009 "Agreed Order to Post Bond," Docket No. 28.) Thirty days came and went and the defendant never posted bond.

On February 10, 2010 BOA renewed its motion for interlocutory sale of the vessel, arguing the vessel is depreciating and is too expensive to maintain while the lawsuit is pending. On February 12, 2010, BOA filed a motion for summary judgment, arguing that the essential facts of the case are undisputed and, therefore, BOA is entitled to judgment under Rule 56. The defendants oppose both motions.

I.

Interlocutory Sale is governed by Rule E(9)(a) of the Supplemental Rules for Admiralty or Maritime Claims, which provides for sale of a vessel, (i) when the property is deteriorating, (ii) when the cost of keeping it is disproportionate to the amount of the claim, or (iii) when there is unreasonable delay in securing

the release of the vessel. The plaintiff need only demonstrate that one of these conditions is present to justify an interlocutory sale. <u>Silver Star Enterprises, Inc. v., M/V Saramacca</u>, 19 F.3d 1008, 1014 (5th Cir. 1994).

BOA has provided, (1) an affidavit from the substitute custodian demonstrating the substantial cost of maintaining the vessel (approximately $20,000 per month), and (2) an affidavit from a marine surveyor indicating that the market value of the M/V Mimi III is presently $365,000 but depreciating, because of the vessel's age, deferred maintenance, susceptibility to corrosion, and because yachts in general are depreciating due to the global recession. BOA also points out the vessel has been under arrest for many months and that the defendants violated the agreed order to post a bond by January 7, 2010.

The defendants object to the interlocutory sale. First, they urge the Court to disregard BOA's affidavits because the affiants were allegedly unqualified and their conclusions were not made based on personal knowledge. In fact, Albert Rodriguez, the director of Miami Trading & Brokers, Inc., testified he had "personal knowledge of the facts set forth" in his affidavit; likewise, Peter Muir, an accredited marine surveyor and president of Allied Marine Consultants, Inc., personally inspected the Mimi III and reached his conclusion "based on [his] experience as a Marine Surveyor, knowledge of the market for vessels similar to [M/V Mimi III], and comparable reported sales." The Court is

satisfied that the affidavits are reliable and worthy of consideration.

Second, the defendants reiterate that they remain interested in posting a bond and ask the Court to extend its previous order by 30 days. But the request for 30 days was made almost 60 days ago (in the defendants' memorandum in opposition to interlocutory sale), yet no bond has been posted. The defendants have had ample time to post bond already. They have provided no assurances they will be able or willing to post bond any time in the future.

Finally, the defendants argue that the storage and maintenance charges claimed by BOA are unreasonable and excessive. Once again, the defendants offer to store and maintain the vessel themselves while the lawsuit is pending, thereby avoiding substitute custodian costs. Even though there exists a legitimate dispute about whether the exact amount of BOA's claimed storage costs are excessive, the defendants have not overcome BOA undisputed evidence that, in any event, the cost of upkeep is disproportionate to the amount of the claim. Further, the Court is satisfied that the boat is depreciating and there has been an unreasonable delay in securing its release, particularly considering the agreed-upon deadline for the defendants to post bond passed nearly four months ago. See Silver Star Enterprises, Inc., 19 F.3d at 1014 (seven month delay is unreasonable). Because of the foregoing conclusions, the Court is satisfied that sale of the vessel is warranted under Supplemental Rule E(9). The plaintiff's renewed motion for

interlocutory sale of the vessel is granted. The Order of Sale will be entered separately.

## II.

Rule 56 instructs that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

BOA has presented affidavits and exhibits establishing: (1) the validity of the bank's interest in the M/V Mimi III, pursuant to the April 3, 2001 First Preferred Mortgage as well as the April 2, 2001 Security Agreement; (2) the defendants' default under the terms and conditions of promissory note and/or mortgage agreement; and (3) the amounts owed by the defendants on the outstanding principal ($454,666), interest ($19,339) and late fees ($3,270), calculated as of January 19, 2010. The defendants have not presented evidence to dispute this information. Indeed, the

defendants acknowledge BOA's security interest in the vessel and admit "they were in arrears as to fully making all payments when due." The defendants do not deny they defaulted on their repayment obligations, nor do they deny the monetary amounts BOA claims is owed in principal, interest, and late fees.

The defendants do, however, object to the amount of storage and maintenance fees (a whopping $141,768 as of February 12, 2010, which has likely advanced to $200,000 or so by now). For one, the defendants argue these costs have accumulated in part because BOA refused to mitigate damages by engaging in good-faith discussion with the defendants about refinancing or other security arrangements, which discussion may have resulted in earlier release of the vessel. Further, according to the affidavit of Charles Paschall, the Mimi III's monthly storage charge prior to its arrest was only $350--a far cry from the $20,000 per month claimed by BOA for care and maintenance.[2]

Thus, the essential facts of the case are not seriously contested (at least not by evidence that would prevent judgment under Rule 56). The record establishes BOA's security interest in the vessel, the defendants' default, and the amounts presently due under the financial agreements. However, there are significant fact disputes about the amount of defendants' liability for substitute

---

[2] The Court is somewhat skeptical that the Mimi III received comparable storage and security for $350 per month. Nevertheless, even if Mr. Paschall intended to state $350 per day, that figure is still significantly less than the $716 per diem BOA claims. This is a fact dispute.

custodian fees. Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1. Bank of America's renewed motion for interlocutory sale of the vessel is GRANTED. The Court will direct the sale of the vessel by the U.S. Marshals by separate order.

2. Bank of America's motion for summary judgment is GRANTED in party and DENIED in part.

The plaintiff is directed to submit within 20 days a proposed order of final judgment in its favor for the amounts the defendants owe to the bank pursuant to the terms of the financial agreements, i.e., the outstanding principal, accrued interest, and contractual late fees. The plaintiff shall provide an accompanying affidavit verifying to these amounts.

Summary judgment is DENIED with respect to Bank of America's claim for storage and maintenance fees. The defendants have introduced sufficient evidence to create a question in the Court's mind about whether these fees may be have been excessive or avoidable, as the defendants claim. The amount of defendants' liability for substitute custodian fees must be decided based on additional factual development and legal argument from the parties.

**DONE AND ORDERED** in Miami, Florida, April 29th 2010.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE